**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Frances Straccia, et al.**</u>

      **v.**                            Civil No. 14-cv-80-PB
                                                Opinion No. 2014 DNH 181

<u>**Joshua E. Menard, Chapter 7**</u>
<u>**Trustee of the Estate of Focus**</u>
<u>**Capital, Inc., et al.**</u>


<u>**MEMORANDUM AND ORDER**</u>


Beginning in 2011, several clients of Focus Capital, an investment company for which Nicholas Rowe served as president and majority owner, became aware of significant losses to their portfolios.  Believing that Rowe's mismanagement caused the losses, a group of investors[1] filed an arbitration claim against Focus Capital and Rowe and later obtained a substantial award against both respondents.  Facing liabilities vastly outstripping its assets, Focus Capital filed for bankruptcy protection.  The Investors – now creditors in the bankruptcy proceeding - seek appellate review of the bankruptcy court's ruling that their attempt to enforce the award against Focus Capital's insurer is subject to the automatic stay.

---

[1] Collectively, Frances Straccia, Angela Straccia, Mark Straccia, Mary Beth Lambert, Ronald Ferrante, Sr., Anne Ferrante, and Ronald Ferrante, Jr. (the "Investors").

## I.   BACKGROUND

### A.   The Policy

Focus Capital purchased an errors and omissions liability insurance policy from Twin City Fire Insurance Company ("Twin City").  The policy obligates Twin City to "pay Loss[es] on behalf of the Insureds resulting from a Claim . . . against the Insureds . . . for a Wrongful Act in the Performance of Investment Advisor Professional Services . . . ."  "Loss" is defined as damages, settlements, or judgments against Focus Capital or its officers when acting as an Investment Adviser. Doc. Nos. 3-3, 3-4.  The "Insureds" include both the "Insured Entity" and "Insured Persons," meaning that the policy covers claims brought against both Focus Capital and its officers.  The policy includes coverage limitations of $1 million per occurrence and $2 million aggregate.  It is a so-called "wasting policy," meaning that the coverage limit is reduced by any costs paid in defense of Focus Capital or its officers when disputing claims covered by the policy.

### B.   History of Litigation

In 2011, the Investors filed a claim against Focus Capital and Rowe with the Office of Dispute Resolution at the Financial Industry Regulatory Authority (FINRA) and a petition to attach in superior court.  Pursuant to the policy, Twin City paid for

counsel to defend both matters.  In 2012, the Investors also filed a declaratory judgment action against Twin City seeking a declaration that they could recover up to the policy's aggregate, $2 million limit.

In August 2012, the New Hampshire Bureau of Securities Regulation ordered Focus Capital to cease violating securities laws and show cause why its investment advisor license should not be revoked.  The state's findings were based on the testimony of a number of additional investors who had also suffered significant losses.  In response, Focus Capital voluntarily agreed to cease operations and surrender its professional license.

On November 27, 2012, a FINRA arbitration panel awarded the Investors over $1.8 million in damages.  The next day, the Investors filed a motion to confirm the award and for entry of individual judgments in the state court action.  On December 4, 2012, Focus Capital filed a voluntary petition for Chapter 11 bankruptcy, listing the Investors' award among its liabilities. The Investors responded on December 11 by filing an emergency motion seeking a determination that the arbitration proceeding and the declaratory judgment action were not subject to the automatic stay.  The trustees, the State, and Focus Capital's creditors all objected to the motion, and the bankruptcy court denied it as premature due to questions regarding which

3

creditors were entitled to proceeds under the policy.

In March 2013, the U.S. Trustee filed a motion to convert Focus Capital's Chapter 11 petition into a Chapter 7 proceeding. The Investors opposed the motion, requesting instead that the petition be dismissed outright.  On April 25, 2013, the bankruptcy court granted the U.S. Trustee's motion because it deemed liquidation and the distribution of Focus Capital's assets to be in the best interest of creditors and the estate.

On July 26, 2013, the Investors filed a motion to dismiss Focus Capital's bankruptcy petition claiming bad faith, personal animus, and the lack of any legitimate bankruptcy purpose.  On August 9, the Investors again filed a motion seeking a determination that the automatic stay did not apply to the declaratory judgment action and the arbitration proceeding.  The Investors based their challenge to the applicability of the automatic stay principally on their contention that the proceeds of the Twin City policy did not qualify as property of the bankruptcy estate.

On January 10, 2014, the bankruptcy court denied both of the Investors' motions.


## II. <u>STANDARD OF REVIEW</u>

This court has jurisdiction to hear appeals from final judgments, orders, and decrees issued in bankruptcy court

4

pursuant to 28 U.S.C. § 158(a)(1).  I review a bankruptcy
court's legal conclusions de novo and will uphold its findings
of fact unless they are clearly erroneous.  Fed. R. Bankr. P.
8013; Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st. Cir. 1997);
Askenaizer v. Moate, 406 B.R. 444, 447 (D.N.H. 2009).  A
bankruptcy court errs if it "ignores a material factor deserving
of significant weight, relies upon an improper factor or makes a
serious mistake in weighing proper factors."  Howard v.
Lexington Invs., Inc., 284 F.3d 320, 323 (1st Cir. 2002)
(internal quotation marks omitted).

### III.  __ANALYSIS__

The sole issue presented by this appeal is whether the
bankruptcy court properly determined that Focus Capital's right
to indemnification under the Twin City policy is property of the
bankruptcy estate.  The Investors contend that the court
resolved this question incorrectly because it failed to give
proper weight to the fact that it had obtained an enforceable
arbitration award against Twin City and Rowe.  For reasons I
describe in detail below, I reject the Investors' argument.

In a slightly different - but controlling - context, the
First Circuit held a right to indemnification under a liability
policy to be estate property despite the fact that a creditor
had obtained a final judgment against the debtor in an amount

far exceeding the liability limits of the policy.[2]  Tringali v.
Hathaway Mach. Co., 796 F.2d 553, 556 (1st Cir. 1986).  In
Tringali, a tort victim received a large damage award pursuant
to a state court judgment against a company.  The ensuing
liability led the company to file for bankruptcy protection,
thereby triggering an automatic stay of state court proceedings.
The tort victim argued that his judgment exhausted the company's
insurance policy and removed its proceeds from the bankruptcy
estate.  The First Circuit rejected this argument, holding that
"language, authority, and reason all indicate that the proceeds
of a liability insurance policy are property of the estate."
Id. at 560 (internal quotation marks omitted).  Citing 11 U.S.C.
§ 541(a)(1)'s definition of estate property as including "all
legal or equitable interests of the debtor in property as of the
commencement of the case" and noting the Supreme Court's broad
interpretation of that language, the court found "the debtor's
right to have the insurance company pay money to satisfy" its
debt to be a property interest within § 541(a)(1).  Id. (citing
United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n.9

---

[2] The court in Tringali described the issue as whether "the
proceeds" of liability insurance are property of the estate.
Tringali, 796 F.2d at 560.  Since the proceeds of a liability
policy are not payable directly to the insured but are instead
payable to a third party in satisfaction of a claim that the
third party has against the insured, I refer to the issue as
whether the insured's right to indemnification under the policy
is the property of the estate.

(1983)).

Explaining its holding, the court emphasized the importance of insurance proceeds in maximizing a debtor's ability to "satisfy legitimate creditor claims" and to avoid "a race to the courthouse whenever a policy is too small to satisfy several potential plaintiffs." Id. It stated that "substantial liability claims" covered by a policy may well render the policy "the most important asset of the estate." Id. (internal alterations and quotation marks omitted) (citing A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001 (4th Cir. 1986)).  The court dismissed as immaterial the fact that the company had no rights under the policy to collect proceeds, or that the tort victim's award would exhaust the limits of the policy.  Id. at 556, 561.

The Investors seek to distinguish Tringali by noting that it involved a Chapter 11 proceeding.[3]  Nothing in the court's opinion, however, suggests that it is inapplicable in the Chapter 7 context.  Moreover, the court's reasoning, with its

---

[3]  In their reply brief, the Investors also argue that the bankruptcy court should have applied In re Edgeworth, 993 F.2d 51, 55-56 (5th Cir. 1993) in considering when the proceeds of the policy are property of the estate.  Edgeworth is a very different case, however, because the tort victim in that case never made any claim against the debtor in the bankruptcy proceeding and instead sought to recover only from the insurer after the bankruptcy proceeding had concluded, the claims of all other creditors had been resolved, and the debtor had been discharged.  Id. at 53, 55.  In any event, even if Edgeworth were not distinguishable on this basis, I would lack the power to apply it because it is inconsistent with Tringali.

focus on satisfying creditor claims in an orderly and equitable
fashion, is equally applicable in Chapter 7 proceedings.[4]  Thus,
even accepting the Investors' argument as true – that they have
a final judgment, the collection of which would exhaust the
insurance policy – their argument is flatly inconsistent with
First Circuit precedent.[5]

---

[4]  The Investors note that Tringali involved a liability policy,
whereas the policy at issue here is an Errors and Omissions
policy.  This distinction is irrelevant, however, because both
types of policies provide coverage to the insured for liability
it owes directly to third parties.  A somewhat more complicated
question arises when a debtor seeks to include the proceeds of a
Directors and Officers policy in the estate even though no
claims covered under the policy have been made directly against
the debtor.  In such cases, the debtor may nevertheless face an
indemnification obligation to its directors and officers and, if
so, the policy proceeds may be of value to the estate even
though no claims have been made directly against the debtor.
Judge Rosenthal confronted this issue in In re Cybermedica,
Inc., 280 B.R. 12, 17 (B. Ma. 2012), and determined that the
proceeds of a Directors and Officers policy were property of the
estate where claims were asserted only against the debtor's
officers and directors but the policy also covered the debtor
for indemnification liability.  Although I agree with the
court's reasoning in that case, I need not apply it here because
this case is squarely controlled by Tringali.

[5]  The Investors' argument would be unconvincing even if they
were correct in claiming that a right to indemnification under a
liability policy ceases to be property of the estate if an
enforceable judgment is obtained against the insured in excess
of the policy limits.  Their argument is based on the premise
that they have obtained a final judgment confirming their
arbitration award.  In New Hampshire, however, the superior
court, not the arbitration panel itself, is authorized to enter
judgment upon the entry of an arbitration award.  N.H. Rev.
Stat. Ann. § 542:9; see Attorney Gen. v. Morgan, 132 N.H. 406,
408 (1989) ("[T]he power of an appointed arbitrator [is limited]
to the issuance of a report and award which shall be final and
shall have the attributes and legal effect of a verdict only if

IV.   **CONCLUSION**

The bankruptcy court properly determined that Focus Capital's insurance policy and its proceeds are property of the estate.  Accordingly, I affirm the bankruptcy court's rulings below.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

September 2, 2014

cc:   Peter N. Tamposi, Esq.
      William S. Gannon, Esq.
      Gregory A. Moffett, Esq.

---

no appeal is taken within the time and in the manner specified . . . .  If no appeal is taken, it is the Court [which] shall enter judgment in accordance [with the arbitrator's report]" (emphasis added)(internal quotation marks omitted)).  Further superior court action is thus necessary to produce a final judgment, leaving the Investors' state court action a "continuation . . . of a judicial . . . action against the debtor" that triggers the Bankruptcy Code's automatic stay.  11 U.S.C. § 362(a).

The Investors contend that Focus Capital was required to respond to their motion for confirmation and individual judgments within a certain time period or its right to object would be waived, and that their failure to file this motion effects a judgment against them.  This argument ignores the fact that the state court action is subject to the automatic stay. Id.  Because it is a continuing judicial action, Focus Capital's right to file an objection extends until, at the earliest, thirty days after the case is terminated or the stay is lifted. See 11 U.S.C. § 108(c).  Thus, the Investors' argument is based on a flawed premise because they have not yet obtained a final judgment confirming their arbitration award.

Joshua E. Menard, Esq.
Patricia M. Jeray, Esq.
Peter C.L. Roth, Esq.
Edmond J. Ford, Esq.
Timothy P. Smith, Esq.
Mark C. Rouvalis, Esq.
Geraldine L. Karonis, Esq.
Ann Marie Dirsa, Esq.